Jenkins v. Sloan is the next case. We'll hear from Mr. Judd. Good morning, Your Honors, and may it please the Court. Kyle Judding for Appellant Juan L. Jenkins. With Your Honor's permission, I would like to reserve three minutes of my time for rebuttal. This case is a simple one that boils down to the following question. Did the Magistrate Judge and District Court properly consider the multiple factual allegations that Mr. Jenkins made regarding the challenges he faced in pursuing his administrative remedies under the Prison Litigation Reform Act of 1995? To conclude that they did not, this Court need look no further than to the affidavit Mr. Jenkins submitted in opposing the State's motion to dismiss, which is at Docket Entry Number 90 below. Counselor, you rely on the affidavit more than the complaint, is that correct? That's correct, Your Honor. Although the Supreme Court has made clear in Jones v. Bach that the PLRA's exhaustion requirement does not impose a heightened or special pleading requirement, Mr. Jenkins did also make allegations, including as part of his substantive First Amendment retaliation claims regarding some of these challenges, but they're more clearly and expressly laid out in that affidavit responding to the State's arguments. Yeah, I would agree with you that it's much better organized and clearer in the affidavit, but go ahead with your argument. Yeah, and I would point your honors to even just the first page and a half of that affidavit. There, Mr. Jenkins alleges that on December 21st... Counsel, sorry, this is Robert Luck. You don't have to much convince me of the affidavit. I've read it and the allegations are disturbing, if true, and I know it's step one of the Turner inquiry, we assume it to be true. So that's the position that you're in. I have two separate questions related to the Florida exhaustion procedure, and I'll ask them both, and I'll ask that you respond to both. The first is, there seems to be a procedure for what are called reprisals. Situations like this, where a prisoner is being, alleging excessive force or some type of inappropriate conduct for someone in the prison, and is in the uncomfortable position of having to grieve the person in the very prison to which he is at. And so the procedure seems to allow a direct inquiry to the secretary in order to grieve that particular problem. And then relatedly, the procedure, if you read the Florida Administrative Code, seems to allow out of time filings, where there's a significant good cause for the out of time filing, such that even if I were to agree with you about how Mr. Jenkins was treated in December 2008 through about early 2010, at some point, he was allowed to file things. And like, for example, when he's at Lake Butler, there doesn't appear to have been any problem or alleged to have been any problem. Why doesn't he file an out of time grievance at that point? And if those two things apply, why is that not part of the exhaustion requirement, in addition to the things that he alleged that happened at the Correctional Institute? Thank you, Your Honor. I would note as an initial matter that because the magistrate judge and district court never undertook a full Turner analysis, that we don't have a factually developed record to really know exactly the sequence of time. With that said, yes, Your Honor, it is of course correct that the Florida Department of Corrections regulations provide for these grievances of reprisal, as well as the grievance appeals in certain situations, to be made directly with the Secretary of the Department. Mr. Jenkins, based on what the state was able to submit in their partial list of grievances, did appear to file three grievance appeals, of which the state has records. I would note that as part of that, Mr. Jenkins makes other allegations, saying that his mails were intercepted, tampered with, things were removed from them. He was given incorrect information from some of prison officials about how those procedures worked. So I don't think that alone would decide the exhaustion question. I would also direct Your Honor... But he clearly, the counsel, he clearly was able to communicate through the mail with the Secretary at least three times. I know that was not a grievance of reprisal, but at some point he was unmolested to do that. And it seems to be that at Lake Butler, once he's transferred there the first time, as I read the affidavit, there doesn't appear to be a single allegation that anything was done improperly to him at Lake Butler. Why is he not required under the Florida Administrative Code for Exhaustion Purposes to file the reprisal grievance directly to the Secretary at that point where he's out of the situation that he's in? Well, Your Honor, I think that goes to the point of not knowing what his remedies were like at Lake Butler. Even if he did have a renewed ability to start grieving then in that first period, his claims do continue substantively after that point as well. And I would point Your Honor to page 18 of Mr. Jenkins' affidavit on the point of the availability of a grievance of reprisal specifically as part following that May 2010 culmination of retaliation from Defendant Assistant Warden Sloan. At one point, Mr. Jenkins alleges that Defendant Warden Sloan goes so far as to say to sort of knock it off with these I think liberally construed and taken as true that suggests that Mr. Jenkins at all levels of Florida's grievance procedures had unavailable remedies. On the point of filing the out-of-time grievance, I believe the state made this argument below in their motion to dismiss in arguing for dismissal with prejudice that was successfully adopted by the magistrate judge is that they found that that time would have lapsed. And given the months and even years after his initial return from Lake Butler in 2010, I do think it would be the case that he simply had no timely ability to regrieve essentially these claims, including at a minimum those claims. I mean, counsel, that's certainly true by the time he filed the lawsuit, but at some point, he was in a position to be able to file something because he did. And also, he was not in the facility to which he was having the issues for some significant period of time. Why is he not required to grieve at that point and to allege exactly why he has not grieved at that point? Well, your honors, I believe that falls under the third Roman numeral of our briefing, where even if your honors were to agree that he did have available grievance procedures for specific windows of time, and the state did carry their burden to make that showing, because he's alleged continuing acts of harm that post-date those as well, at a minimum, he did not have the ability to grieve those later accruing claims. So I'm thinking specifically of the May 2010 incidents where despite his injuries from the table collapse, he's forced to stand and then be beaten until he falls over gashing his knee. That falls after the last grievance appeal of which the Florida Department of Corrections submitted a record. Yes, but counsel, that's also after he's returned back to the Correctional Institute after leaving Lake Butler. Yes. But my point is, I guess my question is, while he's at Lake Butler, where he is not molested by any of the people who are doing this to him, why then is he not required under the Florida procedure to file an out of time a grievance and explaining exactly what the problem is. My mail was being ripped up. I was told that if I filed a grievance, I would be isolated and I wouldn't be allowed out alive. I was specifically deprived of medical treatment because of that. Now I'm in another place. I'm telling you, this is what happened to me. And this is why. Yes, Your Honor. So I would note that prior to his transfer under sort of emergency health circumstances to Lake Butler, and he may have regained his ability to grieve. But at the same time, because he had been transferred first to that hospital and then to the Lake Butler facility, that really the point of his grievance at that point was immediate medical care and being in the hospital setting and Lake Butler would have largely resolved that. So even if Your Honor were to determine for that initial December 2008 period that he should have grieved after his transfer, he had all those other claims upon the return to the Gulf Correctional Institution, at which point, if that answers Your Honor's question. Go ahead with your argument. I appreciate it. Thank you. Yes. Thank you, Your Honor. So I would also like to turn to specifically the line of cases that we submitted in our opening brief at pages 36 or 37, our reply brief at pages six to seven, and the Rule 20HA letter of supplemental authority, which the state has not yet addressed, much less tried to distinguish, where this court has repeatedly corrected similar failures to undertake that initial Turner analysis at all. And that includes the Model Band v. Doe case, Jackson v. Griffin, Abram v. Liu, White v. Statton, Donova v. Gilmore, and Palmer v. Tucker. Like Mr. Jenkins' allegations themselves, the state has not yet acknowledged those, much less failed to distinguish that. And I would submit that that procedural matter, because the magistrate judge- Two minutes remaining. Thank you. Did not undertake that analysis. That alone warrants a reversal and remand on that ground. Turning briefly back to the availability of administrative remedies questions, we would continue to argue that Mr. Jenkins had no administrative remedies available to him at any time relevant to this appeal, given those allegations that he repeatedly throughout this period tried to file grievances that were ripped up, intercepted, kept undelivered. To your Honor's point, at a minimum, however, Mr. Jenkins had no administrative remedies available to him before February 19th, 2010, or after April 12th, 2010. While the state did supply evidence of certain grievances received from Mr. Jenkins during that time window, as the Third and Seventh Circuits have recognized, the availability of administrative remedies is not an either-or proposition. And he had no available administrative remedies, taking his allegations as true, as they must be, until the state had submitted evidence to contest them. Unless your Honors have any further questions at this time, I would like to reserve the remainder of my time for rebuttal. Good morning. Good morning. Thank you, Ms. Durham. Go ahead. I'm sorry. I'm sorry. I didn't know whether or not you could hear me. May it please the Court, Shirley Durham, appearing on behalf of Appellees 8 Miller and McCorvey. Your Honor, it is not clear from this record that the District Court did not follow the two-step procedure in Turner. Under Turner, the District Court was to first look at the factual allegations that contained in the motion to dismiss, and the information submitted by Appellate, and accept his version as true. In doing so, the District Court would realize that there were conflicts between Appellant Affidavit and Appellant Complaint. And some of those conflicts could not be reconciled. They're very inconsistent. The Turner Appellant Complaint is that he was able to-he continued to file grievances in the face of alleged retaliation. Well, Counsel, once there's inconsistencies, then you have to assume the plaintiff's version is true, and then find facts, right? But, Your Honor, the inconsistencies are between plaintiff's complaint and his affidavit, not the motion to- Well, whatever it is, you have to assume those allegations are true, correct? Well, that's correct, Your Honor. But if you assume that he was able to file grievances that he alleged in his complaint, and then assume that he was unable to file grievances as alleged in his affidavit, there's something wrong. I mean, was he able to file grievances? Well, Counsel, I'm looking at the report and recommendation. And first of all, I don't see the word conflict once in relation to complaint and affidavit. But more importantly, the magistrate judge says, and I'm looking at page nine of the order, as stated earlier, a broad conclusory assertion of retaliation is insufficient to demonstrate that the grievance system was rendered effectively unavailable to the plaintiff. The court is labeling the plaintiff's complaint. There's a lot of things you could say about the affidavit, but conclusory or broad is not one of them. But that can be said about the complaint, Your Honor. It is- Counsel, read that sentence. Does it say anywhere where it says- Actually, it says in the beginning of that paragraph is, in response to the motion to dismiss, the plaintiff states. So not the complaint, but in response to the motion to dismiss. That's correct. Well, the response of the motion to dismiss includes the 20-page affidavit that follows the response, right? That's correct, Your Honor. Then how can we say that the magistrate judge follows the Turner procedure of assuming the factual accuracy of those allegations? And then step two, once there is a conflict and once that it's assumed that those are true, and they show that they're true, how can we say that the some sort of unavailability of the grievance procedure, then look to step two of whether those facts, in fact, are accurate and are objectively reasonable? Well, Your Honor, if she considered the fact that appellant stated that he was able to file grievances, and one sentence he stated, that appellant Gilo has warned him that if he wrought more grievances, she would kick him out of the infirmary. And he stated, I wrought more grievances exercising my First Amendment right. Well, counsel, from the period of December 20th, 2008, when the table fell on him, until he's at least to Lake Butler, and we can talk about the Lake Butler if you want later, but at least to that period, he is told in no uncertain terms, by Captain Selinger, quote, not to write another one, or I'll put you in confinement so long that by the time you get out, Jesus would have come back and gone again. Appellant transferred to Lake Butler, to the hospital in Lake Butler, prior to the expiration of the 15 days that he's allotted to file a grievance. Now, how is it that counsel, how is that true from the 15 days from December 20th, when the table falls on him? The whole medical necessity allegations, the deliberate indifference allegations, are that the table fell on him, he had severe injuries, and was not being treated. And when he complained about it, he was told that when the coming of the Lord, that you're not going to get out until the coming of the Lord comes and leaves again. Appellant was transferred to the hospital, to a hospital, Your Honor. Much better, counsel, counsel. Isn't he transferred, isn't it February where he's transferred? No, Your Honor, he's transferred, I'm sorry, go ahead. Wasn't it February of 2019, of 2009? No, December 31st, he was transferred to the hospital, and then he was transferred to Lake Butler. He was transferred from the infirmary to Gulf Hospital on January 31st, New Year's Eve. And from the hospital, he went to Lake Butler, and stayed there for a year, and did not file a grievance. He could have filed a grievance while he was there. But counsel, how do we know that? In other words, isn't that exactly the point of the step two? So, what we have in step one is, assuming the truth, he was told that if you file another grievance, you're, A, you're not going to get, you're going to die, I'm going to confine you until you die, and I'm not going to give you any medical care until you stop. And when he stops, he gets medical care. Now, that's the allegations. It may not be true, and it may be that he had plenty of opportunity once he gets to Lake Butler. But isn't that exactly the point of step two, that we have to make those findings, or the court has to make those findings? Well, if the court did not get past step one, she wouldn't have to make the findings. Yeah, but how on this record, with this affidavit, can you not get past step one? How can you say that these allegations are broad and conclusory? Well, Your Honor, if you look at the complaint, and his allegations in the complaint, and look at the grievances as well, he states that I was able to file grievances. I filed grievances. He stated that the warden assisted him with appellees, the three appellees that were served. The warden counseled them so that he could get what he wanted. He was kicked out of the courtroom. Counsel, counsel, I'm looking at the, again, I'm looking at the R&R, which is the order that we have in front of us. It says that in the response to the motion to plaintiff, quote, does not specifically identify any actions that were taken against him with retaliatory animus as a way to prevent or deter him from filing his grievances, and more particularly his grievance appeals. You're telling me that a specific allegation of the date, who, and the threat that he was given is not a specifically identify any action of retaliatory animus to prevent or deter him from filing? Yes, that was allegedly at the date, but not this conflicting. I know, but the court doesn't say that there was a conflict between them, so I'm crediting one or the other. The court specifically states, the magistrate judge specifically states that she's looking at the response to the motion to dismiss. And from that, she reads the same thing that you and I are reading to say that there's nothing to show that he was prevented or deterred from filing the grievance. How could that possibly be? Because he filed grievances, and he filed grievances regarding the issue. Unlike the cases that are cited by appellants, in those cases, those appellants did not, they didn't grieve the issues that they were afraid of. Those issues were not grieved. This appellant grieved the very same issue that he alleged that he would- That's a year and a half after the table falls on him, almost. He was at the hospital for a year. I understand, and it may be, counsel, it may very well be that he had the opportunity, but we don't have any evidence of that, right? There's no counter evidence. You didn't file a counter affidavit to any of this stuff, other than laying out that these grievances happened. There was nothing for the trial court to make, the trial court didn't make any findings of fact on that. The grievances are- A finding of fact can be made on the grievances, the dates of the grievances. Well, I understand, but those grievances happened after Lake Butler. So if your contention is he could have raised these things once he went to the hospital on the 31st and for the year afterwards, there's nothing in the grievance to show that he could have filed a grievance at that point. There's nothing in the record as I understand it. Well, and- And if there was, isn't it the district court's obligation to make those findings, not ours? Well, you can affirm the district court if there- you can affirm the district court on grounds other than those that were relied on by the district court. Yeah, but we're not going to- but as counsel, as your opposing counsel stated, there's a litany of cases from this court where we've reversed when a trial court did not make the proper Turner findings and did not go through the steps. Why would we do that on our own, especially in a case that's factually complicated? Well, because the issue, isn't it, whether or not the grievance process was available to him? It was available and he used it. Well, but you're saying it was available in 2010. What about for the year and a half before that? It was available. He was in the hospital and didn't file any grievances. He has not alleged that anyone prevented him from filing grievances at Lake Butler. Well, he's alleged that he was told that he would die if he did. He was told that at Lake Butler or at- Counsel, the affidavit states that he would die if he files another one, right? Yes, your honor. So where's the evidence that he could have overcome that threat of death to file one because he went down the street to another facility? Well, in his complaint, he alleges that he filed- that Gordon Sloan had a copy of all of his grievances. All. With emphasis on all. Well, counsel, he also alleged, and I think it's covered also in his affidavit, that three of his informal grievances were ripped up in front of him. Then Gordon Sloan wouldn't have had a copy of all of them. Well, let me just put it more broadly. To the extent there is a conflict between his statement, between the complaint and his affidavit. First of all, as Judge Luck has pointed out repeatedly to you, that's not what the R&R based its recommendation, which was adopted by the district court on. And secondly, that's a stage two kind of credibility determination. It's not a stage one. You don't look and say, I'm going to read this in the way most adverse to him to avoid having to wade through all these factual statements and see where there's exhaustion or non-exhaustion. That's not what Turner prescribes. Anything else? Yes. I just want to point out that the appellant did file grievances regarding the issues. Unlike the other appellants in the cases cited by appellant counsel, who never grieved his grievance, this appellant did grieve the very same issues that he alleged that he was afraid to grieve. Thank you, Ms. Durham. We'll hear now from Mr. Gruden, three minutes in response. Thank you, Your Honors. I would reiterate our point, as I believe this argument has shown, that the magistrate judge simply never undertook the Turner analysis. And again, that independently warrants reversal. I would also direct this court's attention to the Demanche case. I know there were some statements, including statements in briefing, sort of implied that there are some maybe inherent credibility issues with the affidavit. But those allegations were specific. They were concrete. They provided details, dates, times, and name names. And as this court instructed in Demanche, which is at 783 F. 3rd, 1215, even if in a particular case, and to be clear, there's nothing about Mr. Jenkins' history that would suggest this, it may be viewed as unrealistic or unduly formalistic to require the Turner analysis, given a particular prisoner's history with the grievance process or other litigation. That doesn't provide any basis to short circuit Turner. To conclude, as the Supreme Court recognized in Woodford v. Noe, the PLRA's exhaustion requirement serves two important purposes. First, that exhaustion requirement protects prison administrators' authority by allowing them to review and correct any internal complaints in the first instance. And second, it promotes efficiency by bolstering informal dispute resolution systems that can resolve or streamline complaints prior to full-blown litigation. The grievance procedures that Mr. Jenkins has described encountering, in which he faced a series of procedural hurdles leading to a dead end, do nothing of that sort. He thus had no administrative remedies available to him that went unexhausted. For these reasons, and the reasons we give on our briefing, Mr. Jenkins' claims are entitled to proceed now. This court should reverse and remand with instructions that the Magistrate, Judge, or District Court undertake that proper Turner analysis. Thank you, Your Honors. Mr. Drudy, I notice your Addendum 5 appointed, which comes to say the least with no guarantee of compensation for your time. We appreciate very much you accepting that appointment. Let me ask you this, have you had any prior experience in this area at all? Not beyond maybe an unpublished case while clerking, so this was new to me. Yeah, well, it's obvious you've spent quite a bit of time on that subject as well as on the facts of this case. And again, that's if not right in the middle of pro bono, and we appreciate very much the time you've devoted to that. It's been of assistance to the court. Well, very much appreciate the opportunity, Your Honor. We will take that case under submission.